# <u>EXHIBIT A</u>

COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.

RECEIVED & FILED
2020 MAY 10  AM 11: 52
SUPERIOR COURT
CLERK OF THE COURTS
NORFOLK COUNTY

SUPERIOR COURT
DOCKET NO:

```
                                    )
MATTHEW MNICH,                      )
                                    )
              Plaintiff             )            20    0539
                                    )
       v.                           )
                                    )
LABORATORY CORPORATION OF           )
AMERICA HOLDINGS, INC.              )
                                    )
              Defendants.           )
                                    )
```

## COMPLAINT AND JURY DEMAND

### Parties

1.     Plaintiff Matthew Mnich ("Mr. Mnich" or "Plaintiff") is a male resident of the

Commonwealth of Massachusetts, residing at 4 Olde Surrey Lane, Medway, Massachusetts.

2.     Defendant Laboratory Corporation of America Holdings, Inc. (the "Company" or

the "Defendant") is a for profit corporation that, upon information and belief, is incorporated in

the State of Delaware and its principal office is located at 358 South Spring Street, Burlington,

North Carolina.  During all relevant times, the Company employed individuals in the

Commonwealth of Massachusetts, including Mr. Mnich.

### Jurisdiction and Venue

3.     The Superior Court of Suffolk County has subject matter jurisdiction over this

matter because Plaintiff alleges that there are more than $25,000 in damages associated with the

claims and/or because the Defendant conducts business in Massachusetts.

4.      This court has personal jurisdiction over the Defendants because the Defendant has engaged in and transacted business in the Commonwealth of Massachusetts, including by employing the Plaintiff in Massachusetts, and the Plaintiff's causes of action stem largely from business transactions within the Commonwealth of Massachusetts. Indeed, the Plaintiff was employed by the Company in the Commonwealth of Massachusetts, was managed and reprimanded by the Defendant in the Commonwealth of Massachusetts, and was terminated by the Defendant in the Commonwealth of Massachusetts.

5.      Venue is appropriate in Norfolk County as the acts or omissions giving rise to the claims in this Complaint occurred in Norfolk County.

### Statement of Facts

6.      Mr. Mnich is a 50-year-old man.

7.      On or around January 15, 2018, Mr. Mnich began his employment for the Company as the Regional Business Manager in the Hospital Division for the Northeast North Division.

8.      Throughout his employment by the Company, Mr. Mnich primarily worked from his home office at 4 Olde Surrey Lane, Medway, Massachusetts. Importantly, at all relevant times, Mr. Mnich was considered a Massachusetts employee.

9.      Although Mr. Mnich was a Massachusetts employee and worked out of his Massachusetts office, Mr. Mnich's home office was based in Raritan, New Jersey.

10.     When Mr. Mnich was hired by the Company, Mr. Mnich was supervised by Michael Stead ("Stead"), the Company's Associate Vice President of the Hospital Division.

11.     Importantly, at all relevant times, Mr. Mnich was a qualified employee and Mr. Mnich was satisfactorily performing his job functions.

12.     Indeed, although Mr. Mnich did not receive any formal evaluations, within the first few months of his employment, Stead informed Mr. Mnich that he (Mr. Mnich) was doing a good job and that he (Stead) and the Company were pleased with Mr. Mnich's performance.

13.     In addition to Stead's positive evaluation of Mr. Mnich's performance, throughout Mr. Mnich's employment, Mr. Mnich was meeting objective requirements and goals, including, but not limited to, by meeting Mr. Mnich's budgetary goals.

14.     In or around July 2018, while at an awards dinner, Marisa Bruhn ("Bruhn"), a female representative that Mr. Mnich oversaw, excused herself from the table and noted that she needed to retrieve something from her hotel room.

15.     Stead, who was present and heard Bruhn's comment, looked at Bruhn and lecherously stated "Oh, so you're inviting me up to your room." Based on the nature and tone of Stead's comment, it was clear that Stead intended the comment to be aggressively sexual in nature.

16.     Immediately upon Stead saying the comment, Bruhn became clearly and visibly uncomfortable.

17.     Shortly thereafter, Mr. Mnich pulled Bruhn aside and asked her if she was okay. Mr. Mnich offered to support Bruhn if she wanted to report the sexually harassing comment and informed her that he (Mr. Mnich) would truthfully tell human resources what he had witnessed.

18.     Bruhn asked Mr. Mnich not to report Stead to Human Resources, as she feared retaliation.

19.     Bruhn further explained that Stead had made similar sexually harassing comments in the past (including to other female employees). Despite this, Stead remained employed by the Company even though his conduct was clearly known by leadership.

20.    For example, Bruhn explained that, prior to the time Mr. Mnich began working

for the Company, Stead had told a female representative to take his (Stead's) credit card and buy

"something pretty."

21.    In or around early August 2018, despite Bruhn's request that Mr. Mnich not

report Stead based on her fear of retaliation, Mr. Mnich felt it was important to report Stead's

sexually harassing comments to human resources as Stead's conduct was creating a harassing

environment for multiple employees in addition to Bruhn.

22.    However, in keeping with Bruhn's wishes, at that time Mr. Mnich did not inform

human resources of the names of the individuals who had been subjected to and/or witnessed

Stead's sexually harassing comments.

23.    That same day, at human resources' request, Mr. Mnich contacted Bruhn and

asked if Mr. Mnich had her permission to disclose her name in relation to the sexual harassment

complaint he (Mr. Mnich) had raised with human resources.

24.    After receiving Bruhn's approval, Mr. Mnich disclosed Bruhn's identity to human

resources.

25.    Upon information and belief, human resources and/or the Company informed

Stead that Mr. Mnich had raised concerns regarding Stead's sexually harassing comments and

behavior.

26.    Shortly after Mr. Mnich raised protected concerns to human resources, Stead

began treating Mr. Mnich more harshly and began requiring Mr. Mnich to perform additional job

duties that other, younger Regional Business Managers and/or Regional Business Managers who

had not raised concerns were not required to do.

27.     For example, Stead began requiring Mr. Mnich to be in the field traveling daily, despite the fact that field travel had only constituted a small portion of Mr. Mnich's job responsibilities prior to this.  Despite the increased requirements in field travel, Stead continued to require Mr. Mnich to perform his other job responsibilities (which were often incapable of being performed while Mr. Mnich was doing field travel).

28.     In addition, Stead began unjustifiably berating Mr. Mnich and suddenly claiming that Mr. Mnich was not working hard enough and that Stead was "going to file a report to HR and its not going to be favorable."  This was clearly a sarcastic comment referencing the complaint that Stead knew that Mr. Mnich had brought to HR related to the conduct of Stead.

29.     Importantly, Mr. Mnich was working just as hard, if not harder than, other, younger Regional Business Managers and/or Regional Business Managers who had not raised concerns.

30.     As such, it seemed clear that Stead's threat to report Mr. Mnich to HR (as well as his increased demands and harsher treatment) were in direct retaliation for Mr. Mnich voicing protected harassment concerns.

31.     These increased demands and this suddenly harsher treatment led Mr. Mnich to experience severe symptoms, including chest pain and extreme nausea.

32.     As a result of these symptoms, Mr. Mnich met with a doctor of psychology to discuss his symptoms and seek treatment.

33.     Mr. Mnich was diagnosed with Post-Traumatic Stress Disorder ("PTSD").

34.     At all relevant times, Mr. Mnich's PTSD was an impairment which substantially limited one or more major life activities and/or bodily functions, including, but not limited to, his

neurological system, his ability to concentrate, communicate, and think.  Accordingly, Mr. Mnich was disabled under federal law and handicapped under Massachusetts law.

35.     Mr. Mnich also met with his primary care physician to discuss his physical symptoms, including, but not limited to, chest pain and nausea.

36.     Mr. Mnich's primary care physician diagnosed him with hypertension (abnormally high blood pressure) and told Mr. Mnich that he was at significant risk for having a stroke due to the hypertension.

37.     At all relevant times, Mr. Mnich's hypertension was an impairment which substantially limited one or more major life activities and/or bodily functions, including, but not limited to, his circulatory system, his ability to perform manual tasks, and concentrate. Accordingly, Mr. Mnich was disabled under federal law and handicapped under Massachusetts law.

38.     In or around late August 2018, Mr. Mnich notified a coworker that he (Mr. Mnich) felt like he was going to have a heart attack due to the increased stress (as a result of Stead's retaliatory treatment) and his disability.

39.     That same day, Mr. Mnich was called by Vice President of the Hospital Group Kathleen Herzlich ("Herzlich"), who informed Mr. Mnich that she had heard Mr. Mnich felt like he was going to have a heart attack.

40.     During this conversation, Mr. Mnich explained that, due the increased stress (as a result of Stead's retaliatory treatment) and Mr. Mnich's disability, Mr. Mnich did feel as though Mr. Mnich was going to have a heart attack and may need some time off.

41.     In response to Mr. Mnich's request for a reasonable accommodation, Herzlich dismissively informed Mr. Mnich that he should "take the day off."

42. On or around August 31, 2018, during an appointment with this therapist, Mr. Mnich's therapist recommended that Mr. Mnich take a leave of absence because of the symptoms and effects of his disabilities.

43. Shortly thereafter, Mr. Mnich contacted the Company's human resources department and requested the reasonable accommodation of a leave of absence because of his disabilities.

44. The Company's human resources department directed Mr. Mnich to contact the Reed Group, which the Company used as a third-party administrator for disability related leaves.

45. The Reed Group functioned at the Company's agent.

46. At the Company's direction, Mr. Mnich contacted the Reed Group and informed the Reed Group that his (Mr. Mnich's) therapist had recommended Mr. Mnich take a leave of absence because of the symptoms and effects of his disabilities. In keeping with Mr. Mnich's therapist's recommendations, Mr. Mnich requested the reasonable accommodation of a disability-related leave of absence.

47. At the Reed Group's request, Mr. Mnich, including through his therapist, provided the Reed Group and/or the Company with medical documents clearly disclosing Mr. Mnich's disabilities.

48. Upon information and belief, the Reed Group communicated to the Company and/or Herzlich that Mr. Mnich was suffering from one or more disabilities.

49. Upon information and belief, the Reed Group communicated to the Company and/or Herzlich that Mr. Mnich's request for disability related leave was approved.

50.     Accordingly, as of the date of Mr. Mnich's disability related leave, the Company and/or Herzlich were aware that Mr. Mnich was disabled and/or suffered from one or more disabilities.

51.     Upon information and belief, the Company and/or Herzlich regarded Mr. Mnich as an individual who was disabled.

52.     Importantly, throughout the time Mr. Mnich was on disability-related leave, Mr. Mnich remained in contact with the Company (through their third-party disability administrator) and informed them of his progress, as well as when he would likely be able to return to work.

53.     In addition, throughout Mr. Mnich's disability-related leave, Mr. Mnich regularly saw his therapist and/or doctor in order to undergo treatment for his disabilities and accelerate his return to work.

54.     On or around January 15, 2019, Mr. Mnich was medically cleared to return to work part time.  As such, Mr. Mnich requested the reasonable accommodation of being permitted to work part time on a temporary basis pending his clearance to return to work full time.

55.     Importantly, Mr. Mnich made it clear that the request for part time work was only temporary in nature and would likely only continue for a short time frame before he could return to full time status.

56.     Accordingly, although Mr. Mnich requested the reasonable accommodation of returning to work on a part time basis, Mr. Mnich likewise made it clear that he would be able to return to fulltime work in the near future.

57.     The Company granted this accommodation and allowed Mr. Mnich to return to work.

58.     At all relevant times, the Company employed 50 or more employees during 20 or more calendar weeks during the preceding 12 months.

59.     Accordingly, at all relevant times, the Company was a covered employer under the Family and Medical Leave Act ("FMLA").

60.     At all relevant times, the Company employed 50 or more employees within a 75-mile radius of the office at which Mr. Mnich was based (i.e., the Company's New Jersey office).

61.     Furthermore, from January 15, 2018 on, Mr. Mnich had been an employee of the Company for at least 12 months and had worked in excess of 1250 hours during the preceding 12-month period. As such, Mr. Mnich was eligible for FMLA leave.

62.     Mr. Mnich's request for returning to work on a part time basis also constituted a request for intermittent FMLA leave.

63.     Mr. Mnich was later contacted by a coworker. The coworker informed Mr. Mnich that "There's been a lot of conversation about people going out on disability and your name came up. They're cracking down on people going out on short term disability."

64.     On or around January 16, 2019, Mr. Mnich was told that the Company was going to be "restructuring" and that his job was being eliminated.

65.     Accordingly, Mr. Mnich was involuntarily terminated from his job on January 16, 2019.

66.     Upon information and belief, the Company selected Mr. Mnich and/or his position for so called "elimination" because of his disability and/or because he had engaged in protected activity, including, but not limited to, by requesting one or more reasonable accommodations and/or by voicing concerns regarding sexual harassment.

67.     Indeed, Mr. Mnich was performing better than a number of younger, non-disabled Regional Business Managers and/or Regional Business Managers who were not selected for this alleged "job elimination."

68.     Upon information and belief, the Company did not actually eliminate Mr. Mnich's position (or, in the alternative, replaced Mr. Mnich's position with a position with the same or similar job responsibilities) and filled that position with an individual who was not disabled, and/or who had not engaged in protected activities.

69.     Despite claiming that the Company eliminated Mr. Mnich's position, the Company advertised Mr. Mnich's position on one or more job search and/or social media websites, including LinkedIn.

70.     Indeed, the Company continued to advertise Mr. Mnich's position as late as February 8, 2019.

71.     On September 25, 2019, Mr. Mnich timely filed a Charge of Discrimination (the "Charge") with the Massachusetts Commission Against Discrimination (the "MCAD") and cross-filed the Charge with the Equal Employment Opportunity Commission (the "EEOC").

72.     On April 29, 2020, Mr. Mnich notified the MCAD of his intention to proceed in Court.

73.     On June 1, 2020, the EEOC provided Mr. Mnich with a Right to Sue letter.

74.     This lawsuit is timely filed.

## COUNT I
**(Handicap Discrimination in Violation of M.G.L. c 151B)**
**Plaintiff v. Defendant**

75.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

76.    Mr. Mnich suffered from a handicap as defined by the MGL 151B (i) because he had impairments, including PTSD and/or high blood pressure, that substantially limited one or more major life activities; (ii) because Mr. Mnich had a record of such impairments; and/or (iii) because the Defendant regarded Mr. Mnich as having such impairments.

77.    At all relevant times, Mr. Mnich was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

78.    Mr. Mnich disclosed his handicap to the Defendant, and/or the Defendant was aware of Mr. Mnich's handicap, and/or the Defendant regarded Mr. Mnich as handicapped.

79.    Mr. Mnich requested and/or utilized handicap-related reasonable accommodations that would have assisted him in performing the essential functions of his job, including by requesting a temporary leave of absence and/or a reduced work schedule.

80.    The Defendant unlawfully denied one or more Mr. Mnich's accommodation requests and failed to engage in an interactive dialogue, including, but not limited to, by summarily terminating Mr. Mnich after he requested a reduced work schedule.

81.    The Defendant harassed and discriminated against the Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of the Plaintiff's handicap and/or because Plaintiff was handicapped..

82.    More specifically, the Defendant subjected the Plaintiff to adverse actions, including, but not limited to, a harassing and hostile work environment, unjustified warnings and criticism, the failure to accommodate his handicap, and the termination of the Plaintiff's employment because of the Plaintiff's handicap(s).

83.     The Defendant acted with malice and/or with reckless indifference to the state protected rights of Mr. Mnich.

84.     As a direct and proximate result of the Defendant's violations of M.G.L.c. 151B, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

85.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, and costs.

## COUNT II
### (Disability Discrimination in Violation of the ADA, 42 U.S.C. § 12101, et seq.)
### Plaintiff v. Defendant

86.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

87.     Mr. Mnich suffered from a disability as defined by the ADA (i) because he had impairments, including PTSD and/or high blood pressure, that substantially limited one or more major life activities; (ii) because Mr. Mnich had a record of such impairments; and/or (iii) because the Defendant regarded Mr. Mnich as having such impairments.

88.     At all relevant times, Mr. Mnich was a qualified employee and was capable of performing the essential functions of his job with or without one or more reasonable accommodations.

89.     Mr. Mnich disclosed his disability to the Defendant, and/or the Defendant was aware of Mr. Mnich's handicap, and/or the Defendant regarded Mr. Mnich as disabled.

90.     Mr. Mnich requested and/or utilized disability-related reasonable accommodations that would have assisted him in performing the essential functions of his job, including by requesting a temporary leave of absence and/or a reduced work schedule.

91.     The Defendant unlawfully denied one or more Mr. Mnich's accommodation requests and failed to engage in an interactive dialogue, including, but not limited to, by summarily terminating Mr. Mnich after he requested a reduced work schedule.

92.     The Defendant harassed and discriminated against the Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of the Plaintiff's handicap and/or because Plaintiff was handicapped.

93.     More specifically, the Defendant subjected the Plaintiff to adverse actions, including, but not limited to, a harassing and hostile work environment, unjustified warnings and criticism, the failure to accommodate his handicap, and the termination of the Plaintiff's employment because of the Plaintiff's handicap(s).

94.     The Defendant acted with malice and/or with reckless indifference to the state protected rights of Mr. Mnich.

95.     As a direct and proximate result of the Defendant's violations of M.G.L.c. 151B, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

96.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay),

diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses),

punitive damages, attorneys' fees, and costs.

**COUNT III**
**(Retaliation in Violation of M.G.L.c. 151B)**
**Plaintiff v. Defendant**

97.     The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

98.     The Plaintiff engaged in protected activity under M.G.L.c. 151B, including, but

not limited to, (i) opposing, voicing protected concerns, and/or engaging in other protected

activity regarding an illegal hostile and harassing work environment related to his disability

and/or the sexual harassment of another employee; (ii) assisting in an investigation regarding an

illegal hostile and harassing work environment related to his disability and/or the sexual

harassment of another employee; (iii) opposing, voicing protected concerns, and/or engaging in

other protected activity related to the harassing and discriminatory actions taken by the Company

due to Mr. Mnich's disability and/or the sexual harassment of another employee; and/or (iv)

requesting one or more reasonable accommodations for his disability which were intended to

allow Mr. Mnich to perform the essential functions of his job.

99.     The Company retaliated against Mr. Mnich for engaging in protected activity,

including, but not limited to, the aforementioned protected activity, by subjecting Mr. Mnich to

adverse actions, including, but not limited to, a harassing and hostile work environment,

unjustified warnings and criticism, the failure to accommodate his disability and the termination

of the Plaintiff's employment.

100.   The Defendant acted with malice and/or with reckless indifference to the state protected rights of Mr. Mnich.

101.   As a direct and proximate result of the Defendant's violations of M.G.L.c. 151B, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

102.   The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, and costs.

## COUNT IV
### (Retaliation in Violation of the ADA, 42 U.S.C. §§ 12101, et seq.)
### Plaintiff v. Defendant

103.   The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

104.   Plaintiff engaged in protected activity under the ADA, including, but not limited to: (i) opposing, voicing protected concerns, and/or engaging in other protected activity regarding an illegal hostile and harassing work environment related to his disability; (ii) assisting in an investigation regarding an illegal hostile and harassing work environment related to his disability; (iii) opposing, voicing protected concerns, and/or engaging in other protected activity related to the harassing and discriminatory actions taken by the Company due to Mr. Mnich's

disability; and/or (iv) requesting one or more reasonable accommodations for his disability which were intended to allow Mr. Mnich to perform the essential functions of his job.

105.   The Company retaliated against Mr. Mnich for engaging in protected activity, including, but not limited to, the aforementioned protected activity, by subjecting Mr. Mnich to adverse actions, including, but not limited to, a harassing and hostile work environment, unjustified warnings and criticism, the failure to accommodate his disability and the termination of the Plaintiff's employment because of the Plaintiff's disability.

106.   The Company unlawfully coerced, intimidated, threatened, and/or interfered with Mr. Mnich's exercising of, or enjoyment of, one or more rights granted by the ADA.

107.   The Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Mnich.

108.   As a direct and proximate result of Defendant's violations of the ADA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

109.   The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, and costs.

**Count V**
**(Retaliation in Violation of Title VII)**
**Plaintiff v. Defendant**

110.    The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

111.    Mr. Mnich engaged in protected activity under Title VII, including, opposing,

voicing protected concerns, and/or engaging in other protected activity related to sex

discrimination and/or sexual harassment.

112.    The Company retaliated against Mr. Mnich for engaging in protected activity,

including, but not limited to, the aforementioned protected activity, by subjecting Mr. Mnich to

adverse actions, including, but not limited to, a harassing and hostile work environment,

unjustified warnings and criticism, the failure to accommodate his disabilities and the

termination of the Plaintiff's employment.

113.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with

Mr. Mnich's exercising of, or enjoyment of, one or more rights granted by Title VII.

114.    The Company acted with malice and/or with reckless indifference to the federally

protected rights of Mr. Mnich.

115.    As a direct and proximate result of the Company's violation of Title VII, the

Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life,

and emotional damages.

116.    The Plaintiff seeks all damages to which he is entitled, including, but not limited

to lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation,  diminished earning capacity, punitive damages,

interest, attorney's fees, and costs.

**COUNT VI**
**(Interference with Rights Under the Family and Medical Leave Act – 29 U.S.C. § 2615)**
**Plaintiff v. Defendant**

117.    The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

118.    The Company is (and all relevant times was) engaged in an industry affecting

commerce.

119.    At all relevant times, the Company employed 50 or more employees for 20 or

more calendar weeks in the current and/or proceeding calendar years.

120.    As such, the Company is (and at all relevant times was) an employer under the

FMLA.

121.    Mr. Mnich was an eligible employee under the FMLA because at all relevant

times he had worked for the Company for 12 or more months and had worked in excess of 1,250

hours within the past 12-month period.  In addition, the Company employed 50 or more

employees within 75 miles of the location at which Mr. Mnich was based.

122.    Mr. Mnich suffered from one or more serious health conditions, including

hypertension and/or PTSD.

123.    Mr. Mnich requested FMLA leave including in the form of intermittent FMLA,

related to the need to take time off for his serious health conditions and/or to undergo treatment

for his serious health conditions.

124.    The Company interfered with, restrained, and/or denied the exercise of, or the

attempted exercise of, Mr. Mnich's rights under the FMLA.  For example, the Company,

including through their agents, terminated Mr. Mnich after he notified the Company of his intent

to take FMLA qualified intermittent leave, but before Mr. Mnich was able to utilize such leave.

125.    In doing so, the Company unlawfully denied Mr. Mnich's ability to utilize leave

under the FMLA.

126.    The Company's actions were willful and in bad faith.

127.    As a direct and proximate result of the Company's violation of the FMLA, the

Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life,

and emotional damages.

128.    The Plaintiff seeks all damages to which he is entitled, including, but not limited

to, lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, compensatory damages (including, but not limited to, future pecuniary

losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e.

double) damages, interest, attorney's fees, and costs.

## COUNT VI
**(Retaliation for Exercising Rights under the Family Medical Leave Act -- 29 U.S.C. §2615)**
**Plaintiff v. Defendants**

129.    The Plaintiff incorporates all paragraphs above and below as if set forth fully

herein.

130.    Mr. Mnich exercised his rights under the FMLA, including by requesting

intermittent protected leaves under the FMLA and/or by requesting information regarding his

eligibility and/or entitlement to a protected leave under the FMLA.

131.   The Company, including by and through their agents, retaliated and/or discriminated against Mr. Mnich for requesting FMLA leave by subjecting Mr. Mnich to adverse actions, including, but not limited to, the termination of the Plaintiff's employment.

132.   The Company's actions were willful and undertaken in bad faith.

133.   As a direct and proximate result of the Company's violation of the FMLA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

134.   The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorney's fees, and costs.

WHEREFORE, the Plaintiff, Matthew Mnich, respectfully requests that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff compensatory damages, including, but not limited to, back pay, front pay, other monetary damages, reduced earning capacity, compensatory damages, and emotional distress;

D.  Award the Plaintiff liquidated damages;

E.  Award the Plaintiff punitive damages;

F.  Award the Plaintiff his attorney's fees;

G.  Award the Plaintiff interest and costs;

H.  Award the Plaintiff all other damages to which he is entitled; and

I.  Grant such further relief as is just and equitable.

Respectfully Submitted,

MATTHEW MNICH

By his attorneys,

THE LAW OFFICES OF WYATT &
ASSOCIATES P.L.L.C

Date: June 4, 2020                    By:  _____

Michael R. Varraso, 694578
MVarraso@Wyattlegalservices.com

Benjamin J. Wyatt, 664182
BWyatt@Wyattlegalservices.com

Timothy Brock, 695971
TBrock@Wyattlegalservices.com

The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868

(TO PLAINTIFF'S ATTORNEY:  PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT - MOTOR VEHICLE TORT - CONTRACT -
EQUITABLE RELIEF - OTHER)

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT
CIVIL ACTION

NO. 20    0539

Matthew Maich _____, *Plaintiff(s)*

v.

Laboratory Corporation of American *Defendant(s)*
Holdings, Inc..

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon __Michael Oarcaso__,
plaintiff's attorney, whose address is __17 Elm St., Suite 211, Keene, NH, 03431__,
an answer to the complaint which is herewith served upon you, within 20 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken
against you for the relief demanded in the complaint. You are also required to file your answer to the
complaint in the office of the Clerk of this court at Dedham either before service upon the plaintiff's
attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim
which you may have against the plaintiff which arises out of the transaction or occurrence that is the
subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other
action.

WITNESS, **JUDITH FABRICANT, Esquire**, at _____ the __6th__
day of __July__, in the year of our Lord two thousand and __twenty__

_____ Clerk.

NOTES:
1. This summons is issued pursuant to Rules 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption.
   If a separate summons is used for each such defendant, each should be addressed to the particular defendant.

F-33

| **CIVIL ACTION COVER SHEET** | **DOCKET NUMBER** | **Trial Court of Massachusetts<br>The Superior Court** |
|---|---|---|

| **PLAINTIFF(S):** | Matthew Mnich | | **COUNTY** |
|---|---|---|---|
| **ADDRESS:** | 4 Olde Surrey Lane, Medway, Massachusetts | | Norfolk |
| | | **DEFENDANT(S):** | Laboratory Corporation of America Holdings, Inc. |
| **ATTORNEY:** | Michael Varraso | | |
| **ADDRESS:** | 17 Elm Street, Suite C211, Keene, NH 03431 | **ADDRESS:** | 358 South Spring Street, Burlington, North Carolina |
| **BBO:** | 694578 | | |

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO.<br>B22 | TYPE OF ACTION (specify)<br>Employment Discrimination / Retaliation | TRACK<br>F | HAS A JURY CLAIM BEEN MADE?<br>☒ YES    ☐ NO |
|---|---|---|---|

*If "Other" please describe:

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses .................................................................................................... $ \_\_\_\_\_
  2. Total doctor expenses ....................................................................................................... $ \_\_\_\_\_
  3. Total chiropractic expenses .............................................................................................. $ \_\_\_\_\_
  4. Total physical therapy expenses ...................................................................................... $ \_\_\_\_\_
  5. Total other expenses (describe below) ............................................................................ $ \_\_\_\_\_
                                            Subtotal (A): $ \_\_\_\_\_

B. Documented lost wages and compensation to date ................................................................... $ \_\_\_\_\_
C. Documented property damages to dated .................................................................................. $ \_\_\_\_\_
D. Reasonably anticipated future medical and hospital expenses .................................................. $ \_\_\_\_\_
E. Reasonably anticipated lost wages ........................................................................................... $ \_\_\_\_\_
F. Other documented items of damages (describe below) ............................................................. $ \_\_\_\_\_

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Mr. Mnich was subjected to discrimination and retaliation because of his disability and/or because he voiced opposition
to sexual harassment and/or because he took a protected leave under state and federal law, including by being terminated.

TOTAL (A-F):$    1,000,000

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

TOTAL: $ \_\_\_\_\_

**Signature of Attorney/Pro Se Plaintiff: X**      Date: 6/10/2020

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X**      Date: 6/10/2020

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2082CV00539 | Trial Court of Massachusetts The Superior Court  |
|---|---|---|

| CASE NAME: Mnich, Matthew vs. Laboratory Corporation of America Holdings, Inc. | Walter F. Timilty, Clerk of Courts |
|---|---|

| TO: Michael Varraso, Esq. The Law Offices of Wyatt & Associates 17 Elm St Suite C211 Keene, NH 03431 | COURT NAME & ADDRESS Norfolk County Superior Court 650 High Street Dedham, MA 02026 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 09/08/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 10/08/2020 | |
| All motions under MRCP 12, 19, and 20 | 10/08/2020 | 11/09/2020 | 12/07/2020 |
| All motions under MRCP 15 | 10/08/2020 | 11/09/2020 | 12/07/2020 |
| All discovery requests **and depositions** served and non-expert depositions completed | 04/06/2021 | | |
| All motions under MRCP 56 | 05/06/2021 | 06/07/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 10/04/2021 |
| Case shall be resolved and judgment shall issue by | | | 06/10/2022 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 06/10/2020 | ASSISTANT CLERK | PHONE |
|---|---|---|

SCV026\ 08/2018